UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH HEIDENBREICHT and
KURT HEIDENBREICHT,

        Plaintiffs,                Case No. 09-12101
                                                        Honorable David M. Lawson

v.

NEVILOG INC., d/b/a NEVILLE LOG
HOMES, INC. and MARK NEVILLE,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

      This lawsuit arises from the plaintiffs' disappointment in the defendants' failure to furnish proper materials for the construction of a manufactured log home. Defendant Nevilog Inc. (Nevilog) is located in Montana and manufactures home construction kits for log homes to be constructed on its customers' properties. In 2007, the plaintiffs entered into an agreement to purchase from the defendant a home construction package consisting of plans and materials with the intention of building a home in Macomb County, Michigan. They paid a deposit of $100,000. The agreement promises a full refund if requested by the customer "for any reason." The plaintiffs allege that they encountered difficulty with the log construction plans furnished by the defendants and requested return of their deposit, which the defendants have not paid. The defendants do not contest their obligation to refund the deposit, but they maintain that they cannot be sued in Michigan because they have insufficient contacts with this forum. They filed a motion to dismiss for want of personal jurisdiction, which was argued in open court on November 4, 2009. The Court gave the parties time

to file supplemental affidavits, which have been received. The Court now finds that the corporate defendant has sufficient contacts to permit the exercise of limited personal jurisdiction over it, but there is no evidence that the individual defendant had any contacts with Michigan. Therefore, the Court will grant the motion to dismiss as to defendant Mark Neville and deny it as to the corporate defendant. The defendants also have requested that venue be transferred for the convenience of the parties. The Court finds no merit in that request and will deny it.

I.

Plaintiffs Kurt and Ruth Heidenbreicht reside in Macomb County, Michigan. Defendant Nevilog, Inc., d/b/a/ Neville Log Homes, Inc. is incorporated under the laws of Montana and has its principal place of business in Victor, Montana. The individual defendant, Mark S. Neville, is the General Manager of Nevilog and resides in Montana. This much is undisputed.

Nevilog manufactures products for the construction of rustic-looking log homes. It does not engage in the construction of homes as such; rather it designs and prepares the blueprints and materials for construction of the log homes. Mark Neville filed an affidavit describing his company's customary practice is to receive an order for a standard- or custom-designed home, after which he finds the timber within Montana and processes it at his facility in Victor, Montana. When the logs are finished, Neville says he delivers them F.O.B. his factory in Montana, although none of the agreements filed in this case say as much. Neville avers that his company provides no on-site supervision or construction services. His company does, however, furnish the building plans and specifications.

The plaintiffs entered into the contract involved in this case on January 31, 2007. They allege that they learned about the company through an "advertisement found within the State of

Michigan," but provide no other information about this advertisement, and they do not say when they saw it. Pl.'s Ans. to Mot. to Dismiss at 2. The defendants speculate that the plaintiffs viewed the defendant's passive website and subsequently contacted Nevilog to order a log home.

As it turns out, this was not the first time the plaintiffs dealt with Nevilog. Apparently, the plaintiffs contracted for a different log home package sometime before August 2005. As the plaintiffs describe it, the January 2009 agreement "arose out of a previous contract" with the defendant, Aff. of Ruth Heidenbreicht [dkt #25] ¶ 6, for a home to be constructed in Michigan. During the construction of the first home, the plaintiffs encountered problems that required the advice of a structural engineer. The engineer, Jeffrey Sharpe, traveled from Montana to Michigan and performed a site inspection. The plaintiffs believe Sharpe was the defendants' agent, and the defendants insist that he was an independent contractor, although the defendants state that they likely provided Sharpe's name to the plaintiffs.

Sharpe visited the construction site on August 12, 2005 and prepared a lengthy report to both Neville Log Homes and the Heidenbreichts containing his recommendations for "remedial measures." Aff. of Kurt Heidenbreicht [dkt #24] ¶ 11 & Ex. D. At some point, the plaintiffs finalized the plans for the first house and presented them to the local building authorities. They contacted the defendants when they learned that an architectural seal was required, and defendant Nevilog charged them $7,000 for the documentation. Sharpe was the architect who signed off on the plans and furnished his professional seal. The plaintiffs never paid anything to Sharpe directly, either for the plans or for the site visit and consultation. It is unclear from the present record whether the first home was finished or abandoned. What is apparent, however, is that defendant Nevilog continued to do business with the plaintiffs.

On January 31, 2007, the plaintiffs entered into a Customer Deposit Agreement (the "Agreement") with Nevilog "for the manufacture of a log package." Aff. of Kurt Heidenbreicht [dkt #24], Ex. B. The agreement was sent by Nevilog's employee Terry Trobinson to Kurt Heidenbreicht in Michigan via telefax on January 30, 2007. The message on the fax cover sheet makes reference to the attached deposit agreement, specifically calls attention to the refund provision, and assures that "I will not let you down." Aff. of Kurt Heidenbreicht [dkt #24], Ex. A. The Agreement itself contains the handwritten legend "Engineering and Plan Design included in log package." Aff. of Kurt Heidenbreicht [dkt #24], Ex. B. The plaintiffs state that they signed the Agreement and faxed it to the defendants on February 3, 2007. Mr. Neville signed this agreement on February 5, 2007 in Montana. The Agreement states that it was "preliminary" and "[t]he parties anticipate that a final agreement will be made upon the approval of final plans by Customer." *Ibid.* The plaintiffs mailed their deposit check to the defendants in Montana.

Nevilog began the process of fabricating the logs for the plaintiffs' home. The defendants admit that they crafted logs for the plaintiffs in compliance with Michigan laws and ordinances. The plaintiffs allege that they were never presented with, nor accepted, final design plans. Instead, "the [d]efendant provided plans which did not meet with the specification and size proportions of the [p]laintiffs and the plans called for proportions in square footage beyond the limits of [p]laintiffs requests and anticipated financial obligations." Compl. at 4. Therefore, on January 18, 2008, the plaintiffs sent a notice of termination to the defendants and requested a refund of their $100,000 deposit, which they claim the defendants were holding "under the laws of the State of Michigan." Compl. at 3. The defendants assert that "[t]he funds, if any, paid by [p]laintiffs were transferred to [d]efendants' bank account(s) within the State of Montana." Br. in Support of Mot. to Dismiss at

2. The defendants do not contest that they owe the plaintiffs a refund, stating that they "have every intention of refunding [the plaintiffs'] deposit as requested," but state that they need additional time due to slow business. Compl., Ex. 2, Letter.

When no refund was forthcoming, the plaintiffs commenced this action on June 1, 2009, and the defendants responded with a motion to dismiss for lack of personal jurisdiction, or alternatively to transfer venue to Montana.

I.

"The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). In a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). However,

> [w]here, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id.* at 1459.

*Air Prods. & Controls, Inc. v. Safetech Int'l., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (internal citation omitted).

"In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment." *Bagsby v. Gehres*, 195 F. Supp. 2d 957, 961 (E.D. Mich. 2002) (citing *Neogen Corp.*, 282 F.3d at 887-88). The Sixth Circuit has explained that "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) (per curiam) (internal citation omitted). In Michigan, jurisdiction may be asserted over an individual on the basis of general personal jurisdiction, *see* Mich. Comp. Laws § 600.701, or limited personal jurisdiction, *see* Mich. Comp. Laws § 600.705. General personal jurisdiction invests the Court with the authority to pass judgment on a defendant regardless of where the facts giving rise to the cause of action occurred. General personal jurisdiction exists over any individual on the basis of his "(1) [p]resence in the state at the time when process is served; (2) [d]omicile in the state at the time when process is served; [or] (3) [c]onsent, to the extent authorized by the consent and subject to the limitations provided in section 745." Mich. Comp. Laws § 600.701. The plaintiffs do not argue that the defendants' contacts with Michigan are sufficient to establish general personal jurisdiction over them.

Limited personal jurisdiction may be exercised over a defendant who has certain minimum contacts with the forum, but only over claims that arise from or relate to those contacts. *Theunissen*,

935 F.2d at 1459-61. Limited personal jurisdiction may be exercised over an individual if he has one of the following relationships with the state:

> (1) The transaction of any business within the state.
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Mich. Comp. Laws § 600.705. A single contact with the forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). In addition, the Sixth Circuit has explained that the "transaction of any business" clause is quite broad:

> [T]he Michigan Supreme Court stated that "[t]he word 'any' means just what it says. It includes 'each' and 'every.' . . . It comprehends the 'slightest.'" *Lanier v. Am. Board of Endodontics*, 843 F.2d 901, 905-06 (6th Cir. [1988]) (quoting [*Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623, 624 n.2 (1971))]. This construction applies with equal force to section 705. *Hertzberg & Noveck v. Spoon*, 681 F.2d 474, 478 (6th Cir. 1982).

*Theunissen*, 935 F.2d at 1463-64. A transaction of business includes "contact with Michigan customers through the mail and the wires." *Neogen*, 282 F.3d at 892 (citing *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971)).

Even if the plaintiff has satisfied the demands of a statutory grant of jurisdiction, the statute is circumscribed by the Due Process Clause. "[T]his Circuit historically has understood Michigan

to intend its long-arm statute to extend to the boundaries of the fourteenth amendment." *Theunissen*, 935 F.2d at 1462. Therefore, jurisdiction over a non-resident defendant is consistent with due process only if the "facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)).

The Sixth Circuit has identified three considerations to determine whether limited personal jurisdiction extends to the defendant in a particular case:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (internal quotations omitted); *see also Neogen Corp.*, 282 F.3d at 890 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). The Sixth Circuit "views the purposeful availment prong of the *Southern Machine* test as 'essential' to a finding of personal jurisdiction." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)). "Purposeful availment" occurs when "the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Neogen Corp.*, 282 F.3d at 889 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Ibid.* (quoting *Burger King*, 471 U.S. at 475). In that respect, the Sixth Circuit "has found that

contacts lack quality when they are initiated by the plaintiff rather than the defendant, in part because '[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum.'" *Air Products*, 503 F.3d at 552 (quoting *LAK, Inc. v. Deer Creek Enters.*, 855 F.2d 1293, 1301 (6th Cir. 1989) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). On the other hand, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. 462, 473 (1985) (internal quotation omitted).

Simply entering into a contract with a party in a state may be insufficient to establish jurisdiction over the defendant. *Burger King*, 471 U.S. at 478. The law is clear that the mere fact that an out-of-state entity contracts with an in-state entity and undertakes communication related to that contract does not constitute purposeful availment of the forum state for an action related to breach of that contract. Instead, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479. In *Air Products*, for example, the court found purposeful availment based on a nine-year continuous business relationship, where the defendant reached out to conduct business with a company which it knew had its principal place of business in Michigan. *Air Products*, 503 F.3d at 551. However, the requisite amount of contacts need not rise to this level. "The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) (internal citations omitted). In *Neal*, the court

determined that sending fraudulent communications to a forum state *did* constitute purposeful availment sufficient for the exercise of personal jurisdiction. *Ibid.* Ultimately, though, "[i]t is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'" *Ibid*. (citing *LAK*, 885 F.2d at 1301). For again, "telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends [can also] strike . . . as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *LAK*, 885 F.2d at 1301.

A debtor-creditor relationship, standing alone "likely would not satisfy the purposeful availment prong," unless the "claims asserted . . . are also based on actions that arguably were directed at the resident of the forum state." *Air Products*, 503 F.3d at 553 n.2. This suggests that without purposeful direction at the resident – even if the course of dealing arises out of the resident coming across information about the defendant and reaching out to it initially – a court may not have personal jurisdiction over the defendant. For example, in *International Technologies Consultants, Inc. v. Euroglas S.A.*, the Sixth Circuit found the foreign defendant's contacts with Michigan to be "purely fortuitous" because the defendant "was not attempting to exploit any market for its products in Michigan" and had contact with the state only because the plaintiff "happened to have a Michigan address." 107 F.3d 386, 395 (6th Cir. 1997). Because employees of the defendant only "episodically" visited Michigan and because the case involved an issue of contract interpretation involving a European contract, the *Euroglas* court determined that it did not have personal jurisdiction over the foreign defendant and instead that venue was proper in the foreign jurisdiction. *See id.* at 393-94.

The defendants take the position that their relationship with the plaintiffs is solely as a manufacturer of products ordered by the Michigan plaintiffs. The defendants attempt to portray themselves as a parochial enterprise that confines its activity to its Montana factory, agreeing to sell log home packages to all comers who are willing to travel to Montana (or send their freight agents there) to pick them up. That argument might have some appeal if the plaintiffs merely saw the defendants' advertisement, placed an order, and arranged for delivery of the product. But the plaintiffs' affidavits establish more than that.

Defendant Nevilog established a relationship with the plaintiffs that extended beyond its Montana factory to the plaintiffs' property in Michigan. According to Nevilog's own documents, its product included not only the logs and materials to assemble them, but also the plans and specifications. When the plaintiffs encountered difficulty with their first log home package, they turned to Nevilog for help, and Nevilog sent engineer Jeffrey Sharpe to the Michigan site. The defendants dispute that Sharpe was connected to them, but the record contains sufficient facts to undermine that claim. For instance, it is apparent that Sharpe drafted the original plans that Nevilog sold to the plaintiffs. Sharpe stated in his August 15, 2005 report that the foundation he viewed in Michigan "ha[d] been changed significantly from *my* original design." Aff. of Kurt Heidenbreicht [dkt #24], Ex. 2, p. 1 (emphasis added). According to affiant Ruth Heidenbreicht, Sharpe was the architect who certified the plans and furnished his seal. The Heidenbreichts aver that they never paid Sharpe for his services and Sharpe was sent to them by Nevilog, who directed Sharpe's activities. Nevilog's conduct, therefore, supports a claim by the plaintiffs that Sharpe was their agent, conducting business in Michigan to remediate a flawed performance of a contract that originated in Montana.

That is not all the contacts Nevilog had with this forum. As an outgrowth of the plaintiff's last purchase, Nevilog continued to do business with the plaintiffs in Michigan. Nevilog reached out to the plaintiffs by faxing a new Customer Deposit Agreement to the plaintiffs in Michigan. Because the plaintiffs apparently encountered construction problems with the previous design plans, this time the fax came with the notation that the agreement included engineering and plan designs, language assuring the plaintiffs that their deposit would be refunded upon request, and the assurance that the defendant would "not let [them] down." These contacts were not random, attenuated, or fortuitous, but rather purposeful and directed. As the Supreme Court explained, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted).

The "arising from" prong is satisfied "when the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon*, 228 F.3d at 723. The Sixth Circuit has held that personal jurisdiction may exist over a non-resident defendant if the defendant "purposefully directs communications into the forum, and those communications form the 'heart' of the cause of action." *Neal*, 270 F.3d at 333. However, "'the locus of . . . a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state.'" *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) (quoting *LAK*, 885 F.2d at 1301). *But see Neogen*, 282 F.3d at 892 (determining that the plaintiff's allegations of economic harm from trademark infringement were sufficient to support a *prima facie* case for personal jurisdiction).

The court of appeals addressed the "arising from" component of the test in *Lanier v. American Board of Endodontics*, 843 F.2d 901, 908-09 (6th Cir. 1988). There, a female dentist sued

the Illinois-based American Board of Endodontics in federal court in Michigan, alleging that she was denied a license by the Board on the basis of gender. The Board moved to dismiss, arguing that it had insufficient minimum contacts with the State of Michigan. The court of appeals disagreed. After finding that the Board had transacted business within Michigan by exchanging correspondence and telephone calls with the plaintiff, in addition to collecting her application fee, the court found that the plaintiff's cause of action arose out of those business transactions. The court considered two possible theories defining the "arising from" requirement: whether the business transactions "made possible" the cause of action; and whether the cause of action arose in the "wake" of the business transactions. *Id.* at 909. Applying both theories, the court held that the discrimination was made possible and occurred in the wake of the plaintiff's filing of her application, which the court previously had found to constitute the transaction of business in Michigan by the Board. *Id.* at 908-09. The court found that the application process, evaluation, testing, and rejection were part of a "mosaic of activity," "every step of which was a constituent part of the whole." *Id.* at 908. The court reasoned that if the defendant discriminated against Dr. Lanier on account of her gender, it "must have done so, based at least in part, upon what it learned about her from its professional business contacts with her in Michigan during the very earliest stages of the application process." *Id.* at 909. Because those contacts made possible the rejection and concomitant discrimination, and the cause of action lay in the wake of them, the court found that the claims arose from the contacts with the forum.

The cause of action in this case is straightforward: Nevilog's contract faxed to the plaintiffs in Michigan promised them a refund if the customer made a written request for one "for any reason," and the defendants have not lived up to their promise. The parties' continuing relationship made

the cause of action possible, since the continuing effort to supply goods to its previously-dissatisfied customer laid the foundation for the January 30, 2007 agreement. The cause of action also occurred in the wake of the defendant's activity in this state.

If the first two elements are met, an "inference of reasonableness arises . . . [and] only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (internal quotations and citations omitted); *see also Intera Corp.*, 428 F.3d at 618. In the Sixth Circuit, courts also determine the reasonableness of exercising personal jurisdiction over a defendant by weighing several factors, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618. Long-standing business relationships with a forum, and plans to continue those relationships, can support a finding of reasonableness. *See Neogen*, 282 F.3d at 892 ("[The defendant] anticipates from year to year that it will conduct a given level of sales in Michigan. . . . Although [the defendant's contracts with] individual customers do not represent "continuing relationships and obligations" with those particular customers, its predictable yearly business in Michigan does represent such a continuing relationship with the state overall.")

In this case, there may be an economic burden on the defendants having to litigate the plaintiffs' claims in a remote forum. However, this forum has an interest in protecting the rights of its citizens. The defendant did not have difficulty sending its architect to Michigan to resolve past problems, and it continued to seek the plaintiffs' business and sell them more products, including the new design plans. The relationship with the plaintiffs was not "longstanding," but it was

substantial and continuous. The Court has no trouble concluding that it is reasonable to require the corporate defendant to defend the lawsuit in this forum.

The question of personal jurisdiction over the individual defendant, Mark Neville, is another matter, however. Limited personal jurisdiction over an individual may be established by showing that the person transacted business in the state, caused an act to be done that resulted in a tort within the state, owned property here, insured a risk within the state, entered into a contract to perform services in the state, acted as an officer or director of a corporation incorporated in this state, or was domiciled here. *See* Mich. Comp. Laws § 600.705. The plaintiffs have presented no facts to support any of these options and instead even confirm that "Mark Neville did not participate in the communication with Plaintiffs." Aff. of Ruth Heidenbreicht [dkt. # 28] ¶ 19. Beyond his position as a co-owner of the corporate defendant, the plaintiffs have not explained why they are suing him and have presented no support for their claims against him as an individual. They have not shown that the Court may exercise personal jurisdiction over Mark Neville under Michigan's long arm statute.

III.

The defendants have moved in the alternative to transfer venue of the case to the United States District Court for the District of Montana. Although the purpose of the venue rules is to protect a defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial, *see LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979), the proper venue for a civil action is governed by statute. In civil cases "wherein jurisdiction is founded solely on diversity of citizenship," venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). "Under § 1391(a)(2), . . . the appropriate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998). Section 1391 further contains a specific subsection dealing with the propriety of venue when corporations are parties to a dispute:

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c). The Court has found that it has personal jurisdiction over Nevilog. Venue in this district, therefore, is proper.

Under 28 U.S.C. § 1404(a), a district court may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." The burden is on the moving party to establish the need for a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). This requires the Court to make "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations and citations omitted).

Courts have broad discretion to transfer an action pursuant to section 1404 to avoid unnecessary delay and to protect parties, witnesses, and the public from undue expenses and inconvenience. *See generally Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955). The Sixth Circuit has summarized the law by noting that "[i]n short, the Court may consider any factor that may make any eventual trial easy, expeditious, and inexpensive." *Cherokee Export Co. v. Chrysler Intern. Corp.*, 142 F.3d 432 (table), 1998 WL 57279, at *2 (6th Cir. 1998) (internal citation and quotation marks omitted); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (noting that § 1404(a) was intended to bestow greater discretion on trial courts than *forum non conveniens*). "[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org.*, 487 U.S. at 30). Although "a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998) (internal citations omitted).

> This Court has identified the following factors as relevant for of transfers under § 1404(a):
>
> (1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. . . . Other factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause.

*Bennett v. Am. Online, Inc.*, 471 F. Supp. 2d 814, 820 (E.D. Mich. 2007) (citing *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002).

The defendants also seek dismissal under the doctrine of *forum non conveniens*. An action may be dismissed on the basis of *forum non conveniens* if the defendant demonstrates that (1) there is a reasonable alternative forum available and (2) the balance of private and public interests favors transfer. *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989). The defendant has the burden of persuasion on both elements. *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). The factors mimic those identified for consideration of a request to change venue under section 1404(a). *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 516 (6th Cir. 1986).

In the present case, the corporate defendant resides and is subject to personal jurisdiction in Montana. *See* 28 U.S.C. § 1391(a)(1). Montana, therefore, is a proper alternative venue. However, the events in this case took place in both states, with communications occurring by phone and fax. This case proves the point made by the Supreme Court in *Burger King v. Rudzewicz*, 471 U.S. 462 (1985), which expressed the "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476. The case is factually simple, thereby discounting problems of proof and the convenience of witnesses, since documentary evidence equally available to both sides seems to tell the whole story. Moreover, "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for

disputes relating to such activity." *Id.* at 474 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

The Court does not believe that the pertinent factors favor transferring venue or dismissing the case under the doctrine of *forum non conveniens*.

IV.

The Court finds that the plaintiffs have established personal jurisdiction over defendant Nevilog Inc., d/b/a Neville Log Homes, Inc. However, the plaintiffs have not shown a valid basis for exercising jurisdiction over defendant Mark Neville. Venue over the corporate defendant is proper in this district, and there is no good reason to transfer venue.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss for want of personal jurisdiction or alternatively to transfer venue or dismiss for *forum non conveniens* [dkt #8] is **GRANTED IN PART AND DENIED IN PART**. The complaint and amended complaints are **DISMISSED** as to defendant Mark Neville, **only**.

It is further **ORDERED** that counsel for the parties shall appear before the Court **on April 21, 2010 at 11:00 a.m** for a status conference to establish further case management deadlines.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 30, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 30, 2010.

                                              s/Teresa Scott-Feijoo
                                              TERESA SCOTT-FEIJOO